UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| COUNTRY CREATIONS OF THE ) | Case No. 12-20690 |
| ROCKIES, LLC, ) | Chapter 11 |
| d/b/a POUDRE RIVER FOODS, LLC, ) | |
| d/b/a ZIMMBACKER, LLC ) | |
| Debtor. ) | |
| ) | |

ORDER GRANTING MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL

THIS MATTER having come before the Court on COUNTRY CREATIONS OF THE ROCKIES, LLC, Debtor-in-Possession herein, doing business as Poudre River Foods, LLC ("Debtor"), Motion for an Order Authorizing the Use of Cash Collateral, proper notice of the Motion having been given, the Court having reviewed any responses or objections thereto, and after an opportunity for a hearing or a hearing having been held, the Court

FINDS that:

A. On May 23, 2012 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtor is operating as a debtor-in-possession.

B. The Debtor has filed a motion seeking approval of its use of cash collateral pursuant to 11 U.S.C.§ 363(c).

C. The Debtor has provided written notice of the filing of the Motion pursuant to Fed.R.Bankr.P. 4001 to the United States Trustee, the twenty largest unsecured creditors, parties with liens or security interests against the assets and all parties who filed requests for notice (the "Interested Parties"), as evidenced by the affidavit of service previously filed by the Debtor with the Court, which notice this Court finds to be appropriate and adequate under Fed.R.Bankr.P. 4001, and to satisfy the "Notice of Hearing Standards" set forth in 11 U.S.C. § 102(1).

D. The Debtor owns and operates a wholesale and retail bakery ("Bakery") located at 611 8th Street, Suite 1, Greeley, Colorado 80631 (the "Premises"). The Debtor's assets include all of the furniture, fixtures and equipment (collectively the "Equipment") necessary to operate the Bakery. The Debtor's book value for the

Equipment, after depreciation, is $1,062,346.73. The Debtor maintains inventory with a book value of approximately $146,268.78 ("Inventory"). The Debtor also has bank accounts with a current amount of $13,571 ("Accounts"). The Debtor's Accounts Receivable ("A/Rs") are approximately $53,315.43. The Debtor also has trade secrets, intellectual property and a customer list (collectively the "Trade Secrets"), which the Debtor has not valued. The Debtor's Equipment, Inventory, Accounts, A/Rs, and Trade Secrets are collectively referred to herein as the "Collateral."

E.  Prior to filing for relief, the Debtor entered into various financing agreements and extensions of credits with certain creditors, including, but not limited to, Signature Bank (now known as Points West Community Bank), Greeley Community Development Fund, Swift Financial Corporation, Sales Resource, Inc., Leaf Funding, Inc., U.S. Bancorp Manifest Funding Services, First Pacific Funding Toyota Financial Services, Bank of the West, and Loma Systems, Inc. (collectively the "Secured Creditors"). The Debtor disputes certain liens granted to Sales Resources, Inc., and/or certain lease transactions which the Debtor asserts are disguised secured transactions.

F.  The obligations created by the Debtor pre-petition are in part, or in whole, secured by all of the Debtor's assets including the Collateral. The Secured Creditors have filed various Financing Statements with the Colorado Secretary of State perfecting their liens under Colorado law, as more fully described in the Motion.

G.  The operation and preservation of the Collateral, including the generation of revenues and payment of ordinary expenses, are necessary to the preservation and maintenance of the Collateral for the benefit of the Debtor, the Secured Creditors, other creditors and for the bankruptcy estate.

H.  Good cause therefore exists for approval of the Motion.

THE COURT ORDERS that the Motion is GRANTED. The Court FURTHER ORDERS that

1.  The Debtor is authorized to use the Cash Collateral pursuant to 11 U.S.C. §362(c) for the purpose of preserving and maximizing the value of the estate, up to the amounts set forth in the Budget plus the permissible variance hereinafter described, for the period that this Order shall be in effect. During the term of this Order, the Debtor shall also pay all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) from the Cash Collateral.

2.  The Debtor shall not exceed the amount specified in the Budget by more than ten percent (10%) in the aggregate. The Debtor shall not be allowed to exceed the

expenditures set forth in the Budget by 10% in the aggregate unless the secured creditors consent in writing or upon further order of this Court. The Debtor shall not pay any prepetition debts or obligations of the Debtor or its estate without further order of the Court. Nothing herein shall be deemed an approval, authorization or in any way authorize or validate any of items in the Budget, which relate to payments or transfers of any type or kind occurring prior to the Petition Date but listed on the Budget.

3. To provide the Secured Creditors with the adequate protection required by 11 U.S.C. §§ 361 and 363(e) to the extent of the Debtor's use of Cash Collateral:

   a. The Secured Creditors shall have a lien, to the same extent, validity and priority as their pre-petition liens, upon all post-petition property of the Debtor, including, but not limited to any and all accounts, cash, chattel paper, contract rights, statutory rights, depository accounts, documents, equipment, fixtures, general intangibles (including, but not limited to patents and trademarks), goods, instruments, inventory, investment property, instruments, intangibles, instruments, letter of credit rights, supporting obligations, and all proceeds and products thereof (collectively the "Adequate Protection Property"). The security interests and liens granted to the Secured Creditors shall not be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under 11 U.S.C. §551 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, Adequate Protection Property shall not include any and all rights and claims arising under chapter 5 of the Bankruptcy Code.

   b. This Order shall be sufficient and conclusive evidence of the validity and perfection of each of the Secured Creditors' adequate protection liens and security interests in the Adequate Protection Property granted hereunder, but only to the same extent, validity and priority of each of the Secured Creditors' pre-petition liens, and the Secured Creditors shall not be obligated to file or record any document or take any other actions to create, attach, and perfect their respective liens and security interests in the Adequate Protection Property.

   c. The Debtor is authorized and directed to establish and maintain insurance coverage on all of the Debtor's assets and on all Adequate Protection Property for the full replacement value therefore and to cause the Secured Creditors (to the extent of their interest in the Adequate Protection Property) to be named as a loss payee of the insurance policies. Debtor shall also maintain adequate casualty and general liability insurance and shall name the Secured Creditors (to the extent of their interest in the Adequate Protection Property) as additional insureds on all insurance policies. The Debtor shall

        provide the Secured Creditors copies of all insurance policies on which they are named as a loss payee or additional insured within 5 business days after the entry of this Order.

    d.    The Secured Creditors' lien upon the security interests in the Adequate Protection Property shall continue in the proceeds and profits of the Adequate Protection Property as provided in 11 U.S.C. § 552(b) without exception.

    e.    Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Secured Creditors. Provided however, each of the Secured Creditors expressly retains its rights to seek additional adequate protection or to seek relief from the automatic stay with respect to any or all assets in which it claims an interest.

4.    Notwithstanding anything herein to the contrary, the Debtor's right to use Cash Collateral pursuant to the terms of this Order shall terminate on the earlier of:

    a.    this Court's appointment of a chapter 11 trustee or examiner;
    b.    conversion of the Debtor's chapter 11 case to a chapter 7 case;
    c.    the Debtor's failure to comply with the requirements set forth in this Order, including but not limited to the Debtor making expenditures in excess of the limitations established by the Budget more than ten percent (10%) in the aggregate;
    d.    the Debtor's failure to cure, within three business days, any default notice issued by any Secured Creditors; or
    e.    a material adverse change in the Debtor's financial condition or business operations.

5.    The provisions of this Order shall inure to the benefit of Debtor, the Debtor's estate, its creditors and the Secured Creditors and shall be binding upon Debtor, its estate, its creditors, but not any successors to the Debtor and/or the bankruptcy estate, including any chapter 11 or chapter 7 trustee. Notwithstanding anything to the contrary herein, this Order shall not impair the right, if any, of any party to challenge the extent, validity or priority of any of the Secured Creditors' prepetition liens.

6.    The Debtor shall account to the Secured Creditors, upon request, for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Collateral and/or Adequate Protection Collateral in Debtor's possession or control and in which such Secured Lender asserts a lien or security interest (collectively, "Cash Proceeds"). All Cash Proceeds in the possession of Debtor or in any accounts of Debtor in financial or other institutions, including any lock box, brokerage or escrow, pledge or depository accounts, as of the Petition Date, shall constitute proceeds of the Collateral to the extent, if any, that any of the Secured

  Creditor has a valid, perfected security interest therein.

7. The Debtor shall provide the Secured Creditors with reasonable access to its books, records and physical premises, and shall timely supply the Secured Creditors with copies of its Schedules, Statements of Financial Affairs, and Monthly Operating Reports contemporaneously with the filing of same. If Debtor fails to provide the information set forth above, any Secured Creditors may deliver via Email, in care of the Debtor's legal counsel (with copies to counsel for the other parties to this Order), a default notice, identifying any alleged reporting deficiency. Thereafter, the Debtor shall have three business days to cure such alleged reporting default. If the Debtor fails to timely cure such reporting default, the Debtor's authority to use Cash Collateral pursuant to this Order shall cease.

DATED this ___ day of _____, 2012.

                BY THE COURT:

                _____
                U.S. BANKRUPTCY JUDGE